GARRISON, Judge.
This is an appeal by the New Orleans Mosquito Control from a decision of the City Civil Service Commission dated July 9, 1984. The Commission reinstated August J. Blake to his position as Engineering Aide with Mosquito Control (M.C.). M.C. applied for and was denied a rehearing before the Commission. M.C. then perfected the instant appeal. Blake answered the appeal seeking the following:
“1) The Decision of the Civil Service Commission for the City of New Orleans is true and correct, and should be affirmed by this Court, with the following amendments.
2) Appellee is damaged aggrieved and prejudiced by the Commission’s failure to award to him legal interest on all back pay due him, and all costs of asserting the Civil Service Appeal including a reasonable attorney's fee.
3) Appellee is damaged by the Commission’s failure to designate to NEW ORLEANS MOSQUITO CONTROL a date by which appellee must be accepted back in the employ of NEW ORLEANS MOSQUITO CONTROL, and the Commission’s failure to designate sanctions against NEW ORLEANS MOSQUITO CONTROL should it fail to accept appel-lee properly as its employee.
4) The appeal filed on behalf of NEW ORLEANS MOSQUITO CONTROL is frivolous, capricious, and without merit, in that no evidence in the record of the Commission proceedings indicates that the Commission’s decision was rendered in bad faith, was manifestly erroneous, or was arbitrary. Appellee is damaged as a result of this unfounded appeal, to include all costs incurred by the appellee relative thereto, including attorney’s fees paid to respond to said frivolous appeal.
5)Appellee is damaged by unnecessary and prejudicial delays in the resolution of this appeal, due to an extension of the return date of this appeal, granted on behalf of NEW ORLEANS MOSQUITO CONTROL within which to pay costs of this appeal, extending the same from August 27 until October 25, including the costs in attorney’s fees necessary to oppose any further extensions of time. WHEREFORE, appellee, AUGUST J. BLAKE, prays that the Decision appealed from be amended to allow appellee legal interest on the back pay due him, all costs of his Civil Service Appeal (including a reasonable attorney’s fee), and to fix a date by which NEW ORLEANS MOSQUITO CONTROL must accept ap-pellee back to his previous employ and designate sanctions for NEW ORLEANS MOSQUITO CONTROL’S failure to do so; further, that appellee be awarded damages as a result of NEW ORLEANS MOSQUITO CONTROL having filed and pursued a frivolous appeal; and further, that appellee be awarded damages as a result of NEW ORLEANS MOSQUITO CONTROL having filed and pursued a Request for an Extension of Time to pay the costs of appeal, resulting in unnecessary prejudicial delays to appellee; and, as amended, that the Decision of the Civil Service Commission of the City of New Orleans be affirmed and that appellant be condemned to pay all costs incurred herein.”
On December 11,1984, Blake additionally filed an “Objection to Further Extensions of Time to File Appellant’s Brief” as follows:
*195 “I.
The Motion for Suspensive Appeal on behalf of the NEW ORLEANS MOSQUITO CONTROL was filed herein on August 7, 1984.
II.
The record of this proceeding was lodged in the Fourth Circuit, on or about October 25, 1984. The court assigned the due date of November 19, 1984, to appellant, for the filing of its brief. On November 16, 1984, this Court allowed an extension of fifteen (15) days to appellant, until December 4, 1984, within which to file its brief.
III.
On December 4, 1984, this Court allowed an additional delay of fifteen (15) days, until December 19, 1984, to appellant, within which to file this appellant brief.
IV.
Appellee, AUGUST J. BLAKE, JR. has been, is, and continues to be unreasonably prejudiced by any and all delays in these appellant proceedings, and any further extension or extensions of time granted to NEW ORLEANS MOSQUITO CONTROL within which to file its brief, will prejudice AUGUST J. BLAKE, JR., further.”
******
On December 19, 1984, M.C. filed a brief consisting of two pages of “Argument,” one and a quarter pages of “Assignments of Error” and “Issues on Appeal” and one half page of the “Statement of the Case.”
On January 31, 1985, Blake filed an “Ex Parte Motion to Limit Oral Argument of New Orleans Mosquito Control” which provided:
“I.
This matter is before this Court on appeal from the findings of the Civil Service Commission for the City of New Orleans, reinstating appellee and cross-appellant, AUGUST J. BLAKE, to his previous employ as an Engineering Aide by appellant and cross-appellee, NEW ORLEANS MOSQUITO CONTROL.
II.
NEW ORLEANS MOSQUITO CONTROL filed a motion for a Suspensive Appeal August 7, 1984, and the undersigned filed an Answer to Appeal on behalf of AUGUST J. BLAKE subsequent thereto.
III.
NEW ORLEANS MOSQUITO CONTROL filed its original brief on December 19, 1984.
IV.
On January 18, 1985, the undersigned filed, on behalf of AUGUST J. BLAKE, an original brief, in response to NEW ORLEANS MOSQUITO CONTROL’S original brief, and additionally, briefing the issues raised by AUGUST J. BLAKE in his Answer to Appeal.
V.
Under the provisions of Rule 2-12.7, Uniform Rules — Courts of Appeal, NEW ORLEANS MOSQUITO CONTROL had ten (10) calendar days after the appel-lee’s brief was filed, within which to file a reply brief.
VI.
As of January 29, 1985, more than ten (10) calendar days after the filing of the brief of AUGUST J. BLAKE, NEW ORLEANS MOSQUITO CONTROL had not filed a reply brief.
VII.
Under the provisions of Rule 2-12.12, Uniform Rules — Court of Appeal, AUGUST J. BLAKE is entitled to an Order of this Court, limiting any right of NEW ORLEANS MOSQUITO CONTROL to *196 argue in response to the issues raised in AUGUST J. BLAKE’S Answer to Appeal, due to NEW ORLEANS MOSQUITO CONTROL’S failure to file a reply brief to AUGUST J. BLAKE’S original brief timely.
WHEREFORE, AUGUST J. BLAKE prays that this Court issue an Order prohibiting NEW ORLEANS MOSQUITO CONTROL from presenting oral argument in response to the issues made the basis of the Answer to Appeal filed on behalf of AUGUST J. BLAKE.
* * # * * *
The Civil Service Commission provided the following excellently written decision:
“The appellant, August J. Blake, a former Engineering Aide with New Orleans Mosquito Control, was demoted to an Automotive Mechanic III on June 2, 1983 for being unwilling ‘to assume full responsibility for the aviation program.’ On July 19, 1983, he was suspended for five (5) hours in a dispute over his. job tools. On the next day, July 20, 1983 lie was terminated for:
‘declining service to the City of New Orleans, including your withdrawal from the Aviation Program, your refusal to load chemical (sic) in the aircraft, your removal from supervisory duties, your poor performance evaluations of the last few years, your lack of communication with your supervisors, and your attempts to operate your private aircraft repair business out of City facilities, and your subsequent demotion.’
The matter was assigned by the Civil Service Commission to a Hearing Examiner pursuant to Article X, Section 12 of the Constitution of the State of Louisiana, 1974. The hearing was held on January 10, 1984. The testimony presented at the hearing was transcribed by a court reporter. A copy of the transcript and all documentary evidence have been reviewed by the three undersigned members of the Civil Service Commission. In this case, the Commission will be guided by the type of work required of an Engineering Aide in 1969 when the appellant was promoted from Automotive Mechanic III to an Engineering Aide. According to Civil Service, the kind of work required was:
‘Subprofessional engineering work of substantial technical difficulty in providing supervision of Mosquito Control operations and programs, and related work as required.’
From the transcript, it appears that over the years (since 1969) the appellant assumed greater and greater responsibilities at the Mosquito Control facility. He was paid extra for such services but his job description remained the same. Likewise, it appears that the appellant and the administrators at the facility became more and more disenchanted with each other. Such additional responsibilities included loading chemicals onto aircrafts, flying aircrafts, etc.
The appellant testified that he began to notice several discrepancies in the operation of the facility. He tried to correct these through memos to his supervisors in 1979, and later by issuing complaints to the Civil Service Department and the Office of Municipal Investigation (OMI). Mr. Michael Doyle, Labor Relations Specialist with the Civil Service Department, testified that a meeting took place in April, 1982 with appellant, a few members of Civil Service and Ms. Helen Stan-wood, Director of Health (the operations of Mosquito Control fell under her purview). The appellant, although a non-minority member, complained that there was discrimination in the hiring and promoting of minority employees. The appellant was told by Civil Service to contact the Federal Bureau of Investigation and/or the OMI.
The appellant subsequently contacted OMI on April 19, 1982. Mr. Robert Mehrtens, Special Agent/Investigator with OMI, testified that he had been conducting an investigation into several complaints made by the appellant.
Some of the complaints (Blake Exhibit # 7) were that the Mosquito Control administrators were entering into contracts *197 with pilots who were not qualified and that the contract pilots were being paid monies over and above the number of hours that they were flying on each mission. Mr. Mehrtens stated that these charges were substantiated. In fact, he said that 90 percent of the charges investigated were substantiated. Further, he stated that discriminatory hiring and promotional charges were also made by the appellant, but manpower did not permit the investigation of those charges. Lastly, Mr. Mehrtens testified that the appellant reported that since 1979, when he made his initial complaints to the supervisors, he had been harassed, intimidated and threatened with suspensions and dismissal.
With these facts as a backdrop, we can now look more closely at the myriad reasons given for the demotion, suspension and ultimate termination of appellant on July 19, 1983:

1.Declining Service to the City of New Orleans

A thorough reading of the transcript indicates that the appellant decided that he did not wish to perform the extra responsibilities any longer. He reverted to doing those things included in his job description.

2.Withdrawal from the Aviation Program

On May 1, 1981, the appellant asked to withdraw from the Aviation Program. Prior to May 1981, it appears that the appellant ran the program, (testimony of Mr. Edgar S. Bordes, Jr. Assistant Director, Mosquito Control). The appellant’s job description is that of a subprofessional, not one in a position to supervise the entire aviation program.

3.Refusal to Load Chemicals in Aircrafts

This function was never part of the appellant’s job description. He also regarded some of the activities as illegal according to F.A.A. regulations.
4. Removal from Supervisory Duties
The appellant never was formally or officially a supervisor in the first place. Thus, he cannot be removed from a position which he did not technically hold.
5. Poor Performance Evaluations of the Last Few Years
There is no question that since 1979, when the appellant began to complain to his supervisors about problems at the facility, that his evaluations dropped from “outstanding” to “competent” to “needs improvement.” The Commission sees these evaluations as a reflection of the tense situation at the facility brought on by the appellant’s complaints, not necessarily his work as an Engineering Aide. Mr. Bordes admitted that the appellant had skills, but that he was “becoming a problem.”

6.Lack of Communication with Supervisors

The Commission basically finds that the appellant no longer wished to do work not called for in his job description. The administrators continued to want him to assume responsibilities over and above that of an Engineering Aide.

7.Attempts to Operate a Private Aircraft Repair Business out of City Facilities

There is much testimony concerning telephone calls made to and by the appellant which initiated a memorandum on May 12, 1983 from Mr. George T. Carmichael. He requested that all telephone calls be limited to three (3) minutes. The appellant refused to initial this memo. He stated that he did not sign it because of his own “personal aggravation ... it was a mistake.”
Approximately twenty (20) telephone messages within a thirty-five (35) day period were left for appellant which Mr. Bordes had reason to believe were related to his private business. Also, the *198 Mosquito Control telephone number had been given out to his clients.
Another point brought out at the hearing related to appellant’s working on City-property while he was on sick leave. However, witnesses testified that the four (4) times appellant was seen were either Saturdays, Sundays or evenings. The appellant would not have been on duty anyway with the City. Also, there are no regulations at Mosquito Control which prevent an employee from leaving his home while being carried on sick leave.
There is simply no evidence in the transcript that the appellant’s private business prevented him from performing his Engineering Aide responsibilities, although the Commission does issue a strong warning to appellant against “telephone abuse” on City time.
8. Subsequent Demotion
These charges are basically contained in the termination letter, e.g., refusal to load chemicals on airplanes, refusal to fly airplanes, inspect repairs and perform mechanical work on airplanes. Again, we note that the appellant was not hired to perform those tasks, and thus cannot be demoted to a lower classification for non-performance of them.
Lastly, the five (5) hour suspension involves the failure of appellant to bring tools on the job. The appellant’s defense is that he was not authorized to have those tools to perform his work. He earlier accepted a $120.00 allotment to buy tools, but refused to cash a later allotment because he thought he was being “set up.”
It is to be hoped that in the future job descriptions will clearly reflect the job expectations of employees to avoid misunderstandings. Also, it is hoped that the charge of racial discrimination in hiring and promotions will be honestly investigated. The Commission believes that the City did not carry the burden of proof in the appellant’s demotion, suspension or termination.
For the foregoing reasons, the appellant’s appeal is UPHELD and he is to be re-instated to his prior position with back pay and all other emoluments commensurate with the position, minus overtime considerations and deduction of any wages earned by him since July 20, 1983. The back pay entitlement is also to be reduced by any wages owed from July 28, 1983 — November 9, 1983 due to continuances requested by appellant. Appellant is to contact the Appointing Authority regarding his availability for and desire to return to work within seven (7) days from the date of this decision.”
August Blake had been employed by Mosquito Control for 17 years at the time of his termination. He was initially hired as a Mechanic and worked in that position for three to four years, prior to his promotion to Engineering Aide on January 7, 1969. While serving as a Mechanic, he received a “tool allowance” check, but those checks ceased upon his promotion.
For the first five to six years as an Engineering Aide, Mr. Blake had virtually no contact with the aircraft because he was not an F.A.A. licensed mechanic. The only work he did with the planes consisted of towing and painting — both non-license work.
Mr. Blake began to voluntarily assume further duties at M.C. for which he was not paid. He gradually came to the point that by June, 1983 he held four F.A.A. certifications: Commercial Pilot, Mechanic, Inspector, and Mechanic Examiner. Additionally, M.C. owned a DC-3 which under Federal Aviation Regulation # 137.19e placed the burden on M.C. to appoint a contact maintenance person for the F.A.A. Mr. Blake, at no additional pay, voluntarily assumed this position along with the F.A.A. required position of Agricultural Supervisor, which involved checking out pilots. Mr. Blake wrote and filed the DC-3 maintenance schedule required by the F.A.A. for no additional pay. He applied for and kept current F.A.A. certification for the aircraft at no additional pay. At the time that Mr. Blake received his commercial pilot license, *199 he began to be paid $10.00 an'hour extra for flying, but he was never promoted to a supervisory position even though his boss Edgar S. Bordes stated that Blake “ran the aviation program.”
M.C. had one pilot employee and contracted with three outside pilots to fly its planes. Mr. Blake as the Ag Supervisor was required under the F.A.A. regs to check out the pilots. In 1979, he discovered that pilot Michael Carroll was licensed for only single engine planes and did not have the multi-engine license required by the F.A.A. to fly the multi-engine DC-3. He further discovered that pilot Malcolm Beck not only did not have a multi-engine license, but did not even have a commercial license. Beck was only licensed as a private pilot. Mr. Blake further discovered that false representations as to the qualifications of the pilots had been made to Mosquito Control’s Insurer, G & M Surplus Lines. Blake also discovered that contract pilots were being paid for more flying hours than were actually reflected on the plane tachometer, that contract pilots were being paid for additional duties not listed in their contracts, and that Malcolm Beck was being trained for a commercial pilot’s license on City time and at City expense both in City-owned planes and in planes specifically rented and paid for by M.C. for the purpose of training Beck. Apparently, this situation had been going on since 1976 or 1977.
Mr. Blake both in oral and written communication informed Edgar S. Bordes, Assistant Director of M.C. and George Carmichael, Director of M.C. of the F.A.A. violations. When he told Mr. Carmichael about the insurance situation, Carmichael told him to “mind his own business.”
Mr. Blake began refusing to sign or certify as the F.A.A. liason various documents including the pilot’s flight sheets. He testified that violation of the F.A.A. regs could result in civil fines and in losing his licenses. He further testified that he knew that unqualified pilots were flying loads of chemicals and that he did not want to incur legal liability by certifying the flights should there be a crash.
Blake refused to fly with unqualified pilots and on one occasion refused to fly in an unairworthy plane owned by St. Tammany Mosquito Control. That flight was in fact cancelled by the F.A.A. on the grounds that the plane was unairworthy. At the request of George Carmichael, Blake later brought the plane “up to Code” and in compliance with the F.A.A. regs.
Eventually, Mr. Blake wrote to the F.A.A. and requested that he be relieved of his duties under the Regulations. He further gave up the $10.00/hour duties he had assumed in addition to the Engineering Aide job.
Edgar Bordes and George Carmichael took the position that Blake’s job was “to run the air program.” Blake had always received “Satisfactory” or “Outstanding” on his job evaluations, but when Blake refused responsibility for the air program he began receiving “Unsatisfactory” ratings and was demoted to “Mechanic III.”
In April of 1982 Blake had met with Helen Stanwood, Acting Director of the Health Department which oversaw M.C. In front of Mrs. Stanwood, Bordes denied any irregularities in Mr. Carmichael’s agency. Shortly after that time, Mosquito Control became a separate Board and was no longer under the auspices of the Health Department. Stanwood testified that she told Blake to contact Civil Service and that she knows that he did because she received a call from Civil Service on the matter. Also in April of 1982, Blake met with Michael Doyle, a Labor Specialist at Civil Service. Blake was referred to O.M.I. and the F.B.I. by Doyle.
Robert Mehrtens, a Special Agent and Investigator at O.M.I. testified that he met with Mr. Blake who filed a formal complaint on April 19, 1982 relative to the allegations discussed above. Special Agent Mehrtens testified that O.M.I. has been and is currently investigating Mosquito Control and that O.M.I. had found 90% of Blake’s allegations to be true.
*200 Mosquito Control stated that it terminated Mr. Blake for the following reasons:
1. Withdrawing from the Aviation Program
2. Refusing to load chemicals
3. Refusing to communicate with his supervisors
4. Operating his private business out of Mosquito Control facilities, with special emphasis on phone calls
5. Failing to comply with a “tool” memorandum
The Commission found that the Engineering Aide job description did not include responsibility for the Aviation Program and that Blake had communicated with his superiors repeatedly. Blake had helped with loading chemicals on trucks, but refused to load planes because it involved certifying a check-list which included not only chemical loading but also pilot qualification.
For the 15 years prior to his termination, Mr. Blake had operated a sideline business. He had never been asked to terminate his business until just before he was fired. Mrs. Stanwood testified that the subject of Blake’s private business was part of the conversation during the meeting. She stated:
“Well, as I recall, Mr. Blake kind of acted that it was nothing unusual. He said that it had been an accepted thing for a long period of time. They knew about it.” (Tr. Vol. Ill p. 165).
Additionally, Mr. Bordes testified:
“... At the Mosquito Control we really have no objection, per say, if a person was able to work on weekends or after hours, how can we object to that. That is a man’s personal right. Our objection lied in the fact that our phone number was given to the F.A.A. as his contact source for working hours.” (Tr. Vol. II p. 95).
M.C. introduced 20 photocopies of telephone message slips addressed to Mr. Blake for the period 4/29 thru 6/9 which M.C. allege all relate to his private business. Those allegations, however, were never proven. Of the 20 phone calls, 3 were from the Levee Board, 4 from St. Bernard Mosquito Control, 1 was in reference to a Mosquito Control Contract, 4 were from Aero Services in reference to parts, 3 were from Rite-Way Piston Company, 1 was a toll free number, 3 were in reference to an accident, 1 was from a man who said he would “pass by” and 1 was from an individual who first asked for Blake and then asked for Blake’s supervisor at Mosquito Control. In short, the phone calls might or might not have been related to Blake’s job. M.C. also went into Mr. Blake’s office and without his prior knowledge or consent removed, photocopied, and replaced his personal files. None of those documents were introduced at the hearing.
Additionally, Mosquito Control argued that Mr. Blake was “working” at his private business while on sick leave. At the hearing, however, it was determined that the four days at issue were two Saturdays, a Sunday, and after 5:30 on a weekday. Unlike N.O.P.D., Mosquito Control does not have a regulation requiring employees to stay at home when on sick leave.[1] As previously discussed, Mr. Blake did use his Mosquito Control phone number as his contact number for the F.A.A., but that action was to the benefit of Mosquito Control in the operation of its DC-3.
While Mr. Blake still held the Engineering Aide position he received a memo ordering him to bring his tools to his supervisor for inventory. He also received a list of the tools he was required to have. At the same time, he began receiving “tool allowance” checks. Blake testified that most of the tools on the list were tools that he never used and had never had. He estimated that it would have cost him $500-$600 to purchase the required tools.
By this time, Mr. Blake, by his own admission,[2] had become somewhat “paranoid” *201 about the situation at Mosquito Control. He was very suspicious about cashing the checks because “... (he) ha(d) seen them do the same thing that they were doing to me to other people. I knew what their methods were ... The only thing that I can see is that they wanted me to sign that for some other reason to show that I cashed the check.”[3]
Mr. Blake contacted Civil Service and discovered that the “Engineering Aide” job position was not entitled to “tool allowance” checks. Mr. Blake did not cash the checks, but instead gave the checks to O.M.I. as verified by Mehrtens.
On appeal, this court does not have fact review over Civil Service Commission Decisions. However, because Blake is seeking costs and attorney’s fees pursuant to a frivilous appeal, it was necessary to discuss the facts in order to determine the frivilous appeal issue. In light of the facts above, not only does Mosquito Control have a frivilous appeal, it did not have a case to begin with. Hearing Officer Ralph Dwyer stated on the record:
“... Subsequent to Mr. Blake resigning from the Aviation Program and maybe even prior to it, we had lengthy meetings with our insurer trying to maintain aircraft standards, maintain pilot qualifications and standards, and any recommendations that have been made by anyone in aviation we try to follow. Again, we depended upon Mr. Blake totally for the aviation program.
MR. DWYER:
What I don’t understand though is Mr. Blake was not hired for this at all. WITNESS:
No, sir.
MR. DWYER:
He was hired as an engineer aid. His job description is in the record. It has absolutely nothing to do with the maintenance of aircraft, inspecting aircraft, flying aircraft, training people in aircraft, repairing aircraft, and yet he does this. He undertakes it, and he learns it on the job, let’s say. He had had a lot of experience in the Marines and in the reserve and in active duty, and he learns all of this. After awhile, to him he sees what is in bad form. He is not going to go along with it. You all then say that you will demote him because you are not going to do this anymore. Tell me, how can you demote a man because he is not doing something that he (sic) not paid for in the first place?
WITNESS:
Well, if you look at his job description

MR. DWYER:
I Did.
(Tr. Yol. Ill p. 268-269).
* * ⅜ * * *
MR. DWYER:
... The trouble is that the case is predicated on what you wrote or what was written. No matter how good an attorney is, he cannot go back and reconstruct something that did not exist in the beginning. This is a June 2, 1983 letter. I’ve made my observations about this. A man was reduced in grade for not doing work that he was not hired to do in the first place. You came along with another letter, and docked him for five hours relative to the tools on the job. You stuck with that one. Then you removed him from the service because he allegedly was working while he was sick. If anybody reads that for face value, they take it and say that the man should be fired. It turns out that there are two Saturdays and a Sunday, and one time after work. You are stuck with that case, Mr. Bordes. It is not your fault or the attorney’s fault. That is the case. When you all wrote it up and fired him, didn’t you all know that that was Saturdays and Sundays?” (Tr. Vol. Ill p. 271-273) (emphasis supplied).
In keeping with the findings of the Hearing Officer, relative to the initial merits of this case, we find the instant appeal to be a frivolous one under C.C.P. Art. 2164 such *202 that Mr. Blake is entitled to legal interest, costs and attorney’s fees for all proceedings.
Because there is no evidence contained in the record dealing with the attorney’s fees incurred by Mr. Blake, that issue is remanded to the Civil Service Commission for a hearing to determine the amount of attorney’s fees that it is by this opinion required to award and Mosquito Control is required to pay.
Mr. Blake has requested that this Court establish a time limit for his reinstatement by Mosquito Control and that this court establish sanctions in support thereof should Mosquito Control fail to timely reinstate Mr. Blake. In its decision, the Commission provided a 7-day period. Accordingly, we find that M.C. must reinstate Mr. Blake within seven days of the date of finality of this judgment. We further find it unnecessary to provide preventive sanctions at this time for not only are we confident that Mosquito Control will comply with our judgment, but also should it be necessary, sanctions for failure to comply are inherent in the contempt powers of this court.
For the reasons discussed, the decision of the Civil Service Commission is amended to award legal interest, costs and attorney’s fees for all proceedings to Mr. Blake, and, as amended, the decision of the Commission is affirmed. Additionally, the issue of the amount of attorney’s fees is remanded to the Commission for the taking of evidence thereon.
AMENDED AND AFFIRMED.

. Tr. Vol. Ill p. 254.

. Tr. Vol. Ill p. 229.

. Tr. Vol. Ill p. 228-229.